2023, 1917, 18, and 19. Mr. Giarratana, we are ready when you are. Thank you, Your Honor. May it please the Court, Mark Giarratana of McCarter & English representing the appellant, QuantifiCare. I'm joined by my partner, Kevin Reiner, and by Dr. J.P. Zolfanik-Tirion, the inventor of the patents institute and the CEO of QuantifiCare. Your Honors, with respect to claim construction, we submit that the Board improperly construed the claim limitation requiring the optics to be configured for an acquisition of two views according to two different angles. The Board improperly read of a target subject into the claim and improperly read... Can I just see, I was a little confused by the briefing, so can I just see if I'm understanding what the dispute on claim construction is here? Yes. You're saying the sub-optics, can I call them cameras, I don't know if they're different, whatever, they have to be parallel. They cannot be parallel because that doesn't satisfy the limitation of different angles. And the Board, let me finish and then you can tell me more about it. And then my understanding of the Board in Canfield saying that different angles refers to the sub-optics view of the subject, so that parallel is not excluded. That's correct, Your Honor, but if I can clarify slightly. Our position is that the claim language requires the optics to be configured to acquire two views according to two different angles. So the configuration of the optics, the views must be configured to acquire, the optics must be configured to acquire their views according to two different angles. These are figures 2 through 5 in the patent. We can see that the angles are the views of pyramid shapes. Yeah, but just to simplify it for me because it's late in the day or late in the morning. The import of what you're, the differentiation, the dividing point between you and the Board, which makes you lose and the other side win, is that you're saying that the angles can't be parallel. Of the views. The angles of the views can't be parallel. It's about the views that are required. Okay. And so what the Board did, the way the Board got to the error, is rather than construe the claim in accordance with the plain meanings of the words used, the Board referred to a dictionary definition of the word view. And we submit without applying basic rules of grammar or... Well, it didn't end there, in fairness. It looked at the specification. It cited portions of the specification. It cited the prosecution history. It didn't say, here's the definition, let's go home, right? It did not say, let's go home. And I agree, it did go through, but it did not give the language of the claim and it did not give the specification, the import, that it should have. Instead, it relied on a dictionary definition, which quite frankly is directly contrary to the intrinsic record. And it's also contrary to the definitions that were cited by Quantificare. The dictionary definition relied upon by the Board was cited by neither party. And so when we look, first of all, they construed the claim language, the disputed language, outside the contextual language of the claim. They simply said, they looked at the dictionary definition of view and they said, oh, view means a target subject, and then they read the target subject into the claim. But the claim limitation doesn't say target subject. It appears nowhere in the limitation. Well, the spec says, it explains the invention, blah, blah, blah, two simultaneous views with different angles of the subject. That's column four. Yeah, sure it does, Your Honor. First of all, that's not a definitional statement. That clearly does not change the claim limitation to mean two views. I mean, to mean views of the subject, okay? But clearly when you're looking at the picture, you can see here that it allows views of the subject, of course, if the subject happens to be in the view. But what the claim requires is that the optics have to be configured to acquire two views without regard to whether there's a subject in front of the camera or not. When you build the camera, you configure the optics. And when you configure the optics, you configure them to acquire two views. There's no subject there. The subject in the claim, if we read the claim and we look at the language of the claim, we don't get to a target subject until halfway down the claim in connection with a completely different limitation, which is the positioning system 34. It's a completely different limitation or element in the device. So, Your Honor, we submit that when you look at the language of the claim, and by the way, the claim language calls for optics configured for an acquisition of two views according to two different angles. For an acquisition of two views is a prepositional phrase. It links the phrase acquisition of two views according to two different angles with its grammatical subject, which is the optics. So grammatically, the acquisition of two views according to two different angles explains what the optics are configured for. Nothing to do with a target subject. And then when we look at the spec, Your Honor. According to two different angles, that's not angles of the subject? Absolutely not. It's acquiring the optics are configured to acquire two views. Two views of what? Of the subject? No. You don't need to have a subject in front of the camera to acquire the view. You don't need that. Any camera, I can point to space. It's still acquiring a view. A subject may happen to be in the view. And then, of course, you image the subject within the view. But the optics are configured to acquire these two angle views. That's a configuration of the optics. Regardless of whether there's a person in front of it or not. And if you look at the dictionary definitions that we cited, Your Honor, the technical dictionary, which is at appendix 2934, it says that the view acquired by a camera of the nature here is a view frustum. It's a flat top pyramid that encompasses the volume of space recorded by the camera. And so a view frustum, a view is a volume of space that's recorded by the camera. You could have a target in that space or not. That sounds like sophistry. A camera takes a picture of objects. And so if a camera has a view, it has a view of a subject or an object. Of course it does, Your Honor, if a subject is in front of the view. But that is not what the claim says. The claim says that the optics are configured to acquire two views and to acquire them according to two different angles. It does not require a subject to be in front of the optics to define their configuration. So I agree that when you put something in front of the camera, of course there's a person within the view. But that doesn't define the angle of the view. The angle of the view is set by the optics. You're going to talk about the references or about alleged secondary considerations? Yeah, we'll talk about the Plasman record. And so when it comes to whether or not the Plasman, which is the primary reference, whether or not it acquires two views. You should stay in front of the microphone. Oh, I apologize, Your Honor. Yes, so if we look at, this is an image of Plasman's figure 1B. Plasman is the primary reference that's asserted by the petitioner. These are in our briefs, of course. It is, of course, yeah. And this, in fact, is in the petition, this image. Okay, and what Canfield, the petitioner, did was they applied a ray tracing to fig 1B of Plasman. A ray tracing is testified by our expert. Can you start, can you back up a little? Yes, Your Honor. Tell us what the issue here is, is whether or not there's a motivation to combine these two references. The issue here is that Plasman does not acquire two views according to two different angles. Plasman acquires two views according to the same angle. And therefore, we don't need to get to motivation to combine because the prior art doesn't meet the terms of the claimed invention. We disagree that it would be obvious to combine. But we submit you do not need to go there because the references, even if you combine them, do not have optics configured to acquire two views according to two different angles. Plasman, which is the primary reference, acquires two views according to the same angle. And this is uncontroverted testimony. They put in their petition this ray tracing. Our expert explained that a ray tracing, which are the red and the blue lines, our expert testified that a ray tracing is a powerful tool for explaining how optics work. And he went through in detail to explain how this ray tracing shows that this acquires parallel views, not views at two different angles. He says each light beam is depicted as traveling through the lenses, where you see the two straight lines that are going up and down. He says the light passes through such lenses in a straight line only when it travels along the optical axis. I'm just getting a little confused. Your argument with respect to Plasman is based on our rejection of the board's claim construction. If we adopt the board's claim construction, then this argument is moot, right? Or it goes away somehow. Okay, that's what I didn't understand. So you're starting with your claim construction being the correct claim construction, and your arguments are therefore based on that. So we submit that there's really no dispute that Plasman, provided you properly construe the claim, which, again, requires that the optics be configured to acquire two views according to two different angles. It has nothing to do with whether or not there's a target subject there. And the net effect of putting the target subject there, first of all, it's improper to read that into the claim. Okay, so we're back to the claim construction. Yeah, we're back to that. Okay, I just want to understand the context of this. I apologize, Your Honor. So provided you properly construe the claim to say the optics must be configured to acquire two views, Plasman acquires two views at the same angle, not two different angles. And, therefore, it doesn't matter what you combine with Plasman. The resulting combination does not meet the terms of the claim convention. I notice my yellow light is on, so unless there's any further questions, I'll keep the remainder of my time for rebuttal. We will save it for you. Thank you, Your Honor. Mr. Dustin. Good morning, Your Honor. It's Thomas Dustin on behalf of the L.D. Hanfield Scientific. The Board, in this case, carefully considered all of the issues that were raised by Clontificare, went through a methodical claim construction analysis based upon the proper standard under which the claim was constructed. looked at the intrinsic record, both the claim language, the written description, and the file history, and confirmed this interpretation that was derived from these intrinsic sources against any intrinsic evidence that was of record in the proceedings. Now, counsel suggests that the Board ignored context when deciding what the phrase according to two different angles meant. What the Board did in this instance was to observe that according to two different angles modifies the two views, not the configuration of the optics. The words that the claim has are separated by a considerable number of limitations between the optics, sub-optics, and the phrase according to two different angles. What Clontificare wishes to do is to read out that intermediate phrase between those two and then leapfrog and combine the according to two angles with the sub-optics. I think, Your Honor, that what the Board said was that the views are not necessarily specifically of any particular subject, but they are acquired. They are the image that is acquired simultaneously, acquired at the same time. It is what is being acquired is the view. Even the technical dictionary that counsel just referred to, where he relies upon this definition of view frustum, which is nowhere found in the claims or in the specification. This technical dictionary has a definition of view, and view is defined as the image that is acquired, not the orientation of the optics. I'll put another point to it, Your Honor. Well, he said that you don't have to consider what the subject is. You're just considering the angles without the subject at the end, right? What the Board said was... I'm talking about what he said. Yeah, what the Board said is the view is the scene. Whatever is seen by the... And all the figures in the... There are a bunch of figures in this patent, and all of them have a subject there. Yes, Your Honor. They show the angles, and then they show something at the end.  And the specification speaks of views of the subject and views of the subject from different angles. And, in fact, claim one of the 334 patent, Your Honor, which appears at... Let me give you the precise appendix reference. Claim one of the 334 patent, which appears at appendix 8940, that claim has no mention of double optics, has no mention of sub-optics. It has the phrase two views according to two different angles, but it makes no mention of this context that counsel for quantificator says is so important. If this phrase can appear in a claim without any mention of double optics, without any mention of sub-optics, how can this phrase be seen as possibly describing the configuration or the orientation of the optical axes of those optical elements? Optical axes is nowhere in the claim. It's nowhere in the specification. View frustum is nowhere in the claim. View frustum is nowhere in the specification. The board looked at the claim and said what a view is is the thing that is acquired simultaneously. It is the scene that the camera images. And if that image by one of the optics and the image by the other optics are at different angles, then that is all that's required. And that can be done by both parallel front-facing optical elements as well as inwardly angled optical elements. Now the figures that are emphasized by quantificator as all showing inwardly angled optics are repeatedly described as exemplary only. The specification, in fact, at Appendix 1026, Column 4, Lines 43 through 45, Lines 25 through 28, continuously and repeatedly emphasize that this system can be confined or constructed in a variety of ways and that the applicant in no way seeks to limit the type of stereophotogramic devices that they're claiming. This is 119, the patent. Figure 1, I can't tell whether you would consider those parallel or not. Figure 1 is the side view, I believe, Your Honor. I mean, I take your point that it doesn't have to be, if it's not parallel, the others can just be exemplary and not necessarily be parallel. But is that parallel or not? I think from the side, Your Honor, it's difficult to tell what they're emphasizing is the top-down view of the optics in these figures. But my point is, Your Honor, is the argument being made by quantificator is that a person of skill in the art reading this claim, reading the specification, reading the file history, would come away from that reading with the clear understanding that quantificator was not claiming, not claiming stereophotogramic devices per se. They were claiming a specific species of stereophotogramic device and that they were seeking to exclude, clearly exclude from their claim, any stereophotogramic device that had parallel optics. And that's simply not consistent with any of the intrinsic record. As I said, patent 334, claim 1, speaks of this limitation without regard to optics at all. The specification makes clear that the stereophotogramic device can be constructed in a variety of ways and that the figures are only exemplary. And actually, it also emphasizes that the angles that we are talking about here are angles of the subject. And then we get to the prosecution history. The prosecution history, which cited Hoffmeier and rejected the claims on the basis of Hoffmeier. And there's no clearer indication that the applicant did not specifically seek to exclude parallel optics where the applicant responded to the rejection of Hoffmeier, a rejection that, a reference that the board, or that the examiner concluded had the two sub-optics in it, which the board said Hoffmeier taught parallel sub-optics, again, at appendix 53, is the portion of the final written decision discussing Hoffmeier. The board found that the evidence supports that Hoffmeier's lens is faced forward rather than at an angle. And the applicant responded to Hoffmeier and said, that's our invention. Essentially, he said, these optics are the optics that are in our claim. Now, Quantificare argues that Hoffmeier can be interpreted in a number of ways, but they don't indicate that Hoffmeier isn't consistent with optics that are in parallel. So the point about the prosecution history is not a disavowal or disclaimer, as the patent owner suggests, but when faced with a reference, which clearly can be interpreted as having parallel optics, in the face of that reference, the applicant did not say that optical system is not our invention because the optics are in parallel. Instead, Quantificare said, that is our invention. That corresponds directly to the optics that are claimed in claim one of the patent. Now, Your Honor, there was some talk about Plasman. I just want to briefly talk about the figure that's behind me on the easel. Just as you pointed out, if the claim construction that the board rendered here, which was to not incorporate the various limitations that are not present in the claims, that Quantificare seeks to have incorporated into these claims, if that construction is accepted, we don't have to get to what Plasman discloses or not discloses. Whether it discloses parallel or angled optics will be irrelevant. If, however, Your Honors, decide that the claim construction was an error, and that these additional limitations such as view frustum and non-parallel optical axes have to be read into the claim, then I think we have to remand this matter to the board because the board made no findings as to exactly what Plasman disclosed by way of whether the optics in Plasman were parallel or angled. I think the board would have to address that in the first instance because there was conflicting evidence on that point, Your Honor, as to whether or not Plasman's optics are actually angled or whether they're in parallel. It's irrelevant if the construction covers both. If it doesn't, then the board would have to make an assessment of what Plasman discloses. And the board has noted that the Plasman diagram is essentially identical to the diagram in the challenge patents. And so to suggest that this diagram shows parallel optics when an almost identical diagram in the patent excludes parallel optics, that makes no sense. That would have to be addressed by the board, Your Honor. Let me jump to secondary considerations, which was a question Your Honor raised. Which your friend didn't address. Correct, Your Honor. But I just want to make sure that our position on this is clear. The board found an absence of evidence of nexus for the commercial success evidence and the other evidence that was presented. Quantificatory challenges that determination, but I think that it's fairly clear that there was substantial evidence for the board's determination that there was no nexus. Most of that evidence is, in fact, not discussed by Quantificare in its briefing. It's not even made a part of the joint appendix for this court to evaluate what the evidence cited by the board was for its conclusion that there were no nexus. But even putting that aside, the board then went on to address the evidence as if it had nexus and looked at that evidence and concluded that it was inadequate. The board said that the commercial success evidence in terms of sales of the patent owner's products wasn't sufficient because it didn't indicate what the market share was. It didn't indicate what the growth of those sales was. It didn't indicate why those sales were made. In looking at the sales of the accused products, the board went on to point out that this evidence simply that there was a difference between the production numbers of the accused product and other photographic devices that arguably don't incorporate the invention. Maybe that was part of it. I understood the board to say that they're not going to look at the accused products because no determination has been made as to whether or not those are infringing products or not. That is one of their determinations, Your Honor. Is that correct as a matter of law? Can they exclude looking at the accused devices because there's been no determination of infringement? What the board found was that there was insufficient evidence to show that the accused devices practiced the patented invention and that their success, whatever it may be, was due to the patented invention. But even beyond that, Your Honor, what was put into evidence was not the sales of the accused invention. I'm sorry. Let me start again. What was put in evidence before the board was not the sales of the accused products. It was merely a very brief presentation of numbers showing that the accused products were manufactured in this amount and non-accused products were manufactured in this amount. Based purely on speculation, which the board pointed out was just pure speculation, the suggestion made by Quantificator was that the differences in the numbers of units manufactured was an indication that the patented invention enjoyed substantial commercial success. What the board said is that's pure speculation. There's no evidence here why one product was produced at a greater volume than another product. Maybe the product was discontinued. Maybe there were other advantages to the product. In fact, the board pointed out that there were any number of different additional features of the accused product that were not encompassed by the claim and could have accounted for whatever production differences might have existed. Your Honor, I see I only have about 30 seconds, and I want to make sure if there are any further questions on the briefing that Your Honors have with respect to this that I answer that. Apparently not. Thank you, Your Honor. Thank you, Counsel. Mr. Giratana has some rebuttal time. Thank you, Your Honor. Your Honors, we submit that if you're going to read of a target subject into the claim limitation, you must find a clear definitional statement or disclaimer of subject matter to do that because the of a target subject simply does not appear in the claim limitation. And there is no such definitional statement. There is no disclaimer of such subject matter. I encourage you to read the claim literally in accordance with the rules of grammar. It simply requires that the optics or the stereophotogrammetry device in the 334 patent must be configured to acquire two views according to two different angles. And the phrase, two views according to two different angles, modifies, by basic rules of grammar, the optics. And the sentence says, the optics are configured to acquire their views according to two different angles. There is absolutely no mention of a target subject there. And if you read a target subject into there, we submit that would be legal error because there is absolutely no clear definitional statement or disclaimer of subject matter that would allow that. And the only way the board got to that conclusion was to improperly rely on a dictionary definition to say that views means viewing the subject. And read the words of the subject into the claim limitation. And we submit that was legal error because that's contradicted by the spec in the prosecution history. I acknowledge that the drawings in the patent show people, show a face and a torso within the views. Well, of course they're going to have to do that because when you use the camera, you've got to put somebody there. But before you put somebody in front of the camera, you have to configure the optics. That's done at the manufacturing phase. And you must configure the optics to acquire those two pyramid-shaped views at an angle, not parallel. And that's what the claim requires, Your Honors. And we ask that you find that way. Now, with respect to Hoffmeier in the prosecution history, the board found that Hoffmeier was ambiguous as to whether it disclosed angled views or as to whether Hoffmeier disclosed angled views or parallel views. And you can see Hoffmeier has figure four here, which is what the board was looking at, which was the subject of the prosecution history. Hoffmeier shows straight lines. It shows angled lines.  Canfield says that this shows acquiring parallel views along these lines. During prosecution, Quantificare thought that this showed angled lines. The point is, Hoffmeier doesn't say what these lines are. It doesn't say what its optical axes are. It doesn't say how its views are acquired. And the board explicitly found that it's ambiguous in that regard. So a statement about what an ambiguous reference shows can't be a clear definitional statement one way or another. And so we submit that you must go back to the claim language as written and read that consistent with what's in the specification. With respect to – one more thing. Counsel argued that – with respect to claim construction. Counsel argued that two views – he argued that two views modifies – I'm sorry. He argued that two different angles follows two views. But that's not the correct grammatical construction. The prepositional phrase is for a simultaneous acquisition of two views according to two different angles. And that phrase refers back to the optics to explain that the optics are configured to simultaneously acquire those two views according to two different angles. Thank you, Counsel. The optics here show that your red line is on. Okay. And so we thank both parties.  The case is submitted. Thank you, Your Honor. Thank you.